■ In the Matter of AUDREY C. and Another, Children Alleged to be Neglected. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; PAULINE C., Appellant.—Appeal from an order of the Family Court of Broome County, entered March 13, 1978, which terminated appellant's parental rights and granted respondent's petition for custody and guardianship of appellant's children. The Commissioner of Social Services of Broome County, on May 17, 1977, petitioned the Family Court of Broome County, to commit the guardianship of the person and custody of the twin children of appellant, born on December 19, 1963, to the commissioner, by reason of the mental retardation of appellant, pursuant to section 384-b (subd 4, par [c]) of the Social Services Law. At the time this proceeding was commenced, the children were 13 years of age and had been in the care of the Commissioner of Social Services since August 8, 1969. Section 384-b (subd 6, par [b]) of the Social Services Law defines mental retardation as follows: "For the purposes of this section, 'mental retardation' means subaverage intellectual functioning which originates during the developmental period and is associated with impairment in adaptive behavior to such an extent that if such child ever were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child as defined in the family court act." Appellant was examined by a psychiatrist and a psychologist. The psychiatrist reported that appellant is unable to read and write except for a few words, and is unable to do simple arithmetic. He also reported that her ability to think abstractly is nil, and her general fund of knowledge is almost zero. The psychologist reported that his testing revealed that appellant had "an extremely limited fund of general information, very low ability to think abstractly, and inadequate judgment and comprehension of ordinary life situations." The psychiatrist testified that appellant, in his opinion, was mentally retarded under the definition in the Social Services Law, and that her behavior would be generally poor because she had very little potential. He further testified that if the children were returned to appellant's care, the potential existed for them to become neglected children, and that she might successfully raise the children if she had close supervision. The psychologist testified that the tests he administered to appellant resulted in a finding that she suffered from mental retardation, and her intelligence hovered around the line between what is generally referred to as borderline and defective. His findings essentially confirmed the findings of a Dr. Goldstein who had tested her in 1969. He also testified that it would be highly unlikely that appellant would be able to rear two teen-age children without very substantial supervision, and that she clearly met the definition of mental retardation under the statute. Appellant contends that petitioner did not meet the statutory requirement of clear and convincing proof of mental retardation, in that both the psychiatrist and the psychologist were unable to establish that the retardation originated during the developmental period, and the psychologist testified that there was no test available to establish that fact. Section 384-b (subd 3, par [g]), insofar as it is pertinent, provides: "An order committing the guardianship and custody of a child pursuant to this section shall be granted only * * * upon a finding that one or more of the grounds specified in paragraph (c) of subdivision four are based upon clear and convincing proof." Section 384-b (subd 4, par

[c]) authorizes an order committing the guardianship and custody of a child only upon the ground that the parent or parents "are presently and for the foreseeable future unable, by reason of mental illness or mental retardation, to provide proper and adequate care for a child who has been in the care of an authorized agency for the period of one year immediately prior to the initiation of the proceeding under this section". On this record, there is clear and convincing proof that appellant is retarded, and has been retarded for a considerable period of time as evidenced by the results of the tests in 1969. While the psychiatrist and psychologist admitted that there were no tests available to establish that the retardation originated during the developmental period, there is no evidence of any traumatic or other experience which originated the retardation. In the absence of any other explanation of the retardation, the opinions of the experts were sufficient to establish that the retardation originated during the developmental period, and to shift the burden to establish otherwise upon the opposing party. Here, appellant offered no testimony of any nature to contradict the testimony offered by petitioner. Order affirmed, without costs. Mahoney, P. J., Greenblott, Staley, Jr., Main and Mikoll, JJ., concur.